STADTMAUER & ASSOCIATES
Marc A. Stadtmauer (MS 5863)
110 East 42nd Street, Suite 1508
New York, New York 10017
(212) 986-6200

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X    Docket No. 21 Civ. 8647 (PAE)

NANCY CALDAROLA,                                      :       **SECOND
                                                              AMENDED COMPLAINT**
                               Plaintiff,             :

                 - against -                          :

VERANO HOLDINGS, LLC and
VERANO HOLDINGS CORP.                                 :       **JURY TRIAL DEMANDED**

                                                      :
                               Defendants.
-------------------------------------------------------------X

         Plaintiff, Nancy Caldarola, by her attorneys, Stadtmauer & Associates, pursuant to this

Court's Order dated December 29, 2021, respectfully submits this Second Amended Complaint

complaining of the Defendants, and alleges as follows:

## THE PARTIES

         1.      Plaintiff, Nancy "Tex" Caldarola ("Tex"), is a natural person and a resident of the

City, State and County of New York, residing–and with a principal place of business–at all relevant

times at 34 East 81st Street, Unit 1A, New York, NY 10028.  Plaintiff sometimes does business

under the informal and unregistered name: "White Knight Global Partners."

         2.      Defendant, Verano Holdings, LLC (hereinafter "Verano LLC") was, and still is, a

limited liability corporation incorporated under the laws of the State of Delaware, which, at all

relevant times, has and had a principal place of business at 415 North Dearborn, 4th Floor, Chicago,

Illinois 60654.  The members of Verano LLC at the time of filing the Complaint in this action were

as follows: (a) Verano Holdings USA Corp., (b) ZenNorth, LLC, (c) SGI 1 LLC, (d) A&T SPV II

1

LLC, (e) ZNN Holdings, LLC, and (f) Nuuvn Holdings, LLC.  Each of those entities were formed in Delaware, with the exception of A&T SPV II LLC which was formed in Texas.  Each of those entities' principal place of business is in Illinois. The sole member of each of those LLCs is Verano Holdings USA Corp., a Delaware corporation with its principal place of business in Illinois.

3.      Defendant, Verano Holdings Corp. (hereinafter "Verano Corp"), was, and still is, a corporation incorporated under the laws of British Columbia, Canada, which, at all relevant times, has and had a principal place of business at 415 North Dearborn, 4th Floor, Chicago, Illinois 60654.

4.      In or about February 2021, Verano Corp. assumed complete control of Verano LLC and liability for the debt of Verano LLC to the plaintiff herein.  At this time, all or most of the officers of Verano LLC became officers of Verano Corp. and the asset of Verano LLC which is the subject of this lawsuit (Green RX) became the asset of Verano LLC–either directly or indirectly–and reported on the financial statements of Verano Corp.  Verano LLC assumed responsibility for managing Verano LLC (including its labor relations, general policies, and daily activities), paying the debts of Verano LLC and keeping the books and records of Verano LLC in their shared headquarters at 415 North Dearborn, 4th Floor, Chicago, Illinois 60654.

5.      Defendants Verano LLC and Verano Corp are therefore collectively referred to herein as "Verano."

6.      Defendant Verano describes itself as:

> "a leading vertically-integrated multi-state cannabis operator in the U.S.  As an operator of licensed cannabis cultivation, processing and retail facilities, Verano is devoted to the ongoing development of communal wellness by providing responsible access to regulated cannabis products to the discerning high-end customer."

See: *Verano Holdings, LLC, Management's Discussion & Analysis*, dated April 7, 2021 at p. 2.

7.      At all times hereinafter mentioned, Verano was and is, directly or through subsidiary entities, engaged in the business of manufacturing, among other businesses.

## JURISDICTION AND VENUE

8.      This Court has subject matter jurisdiction to entertain the instant matter by virtue of

2

the provisions of Title 28, United States Code, Section 1332(a)(2) and (3), in that the plaintiff is a resident, citizen, and domiciliary of the State of New York and defendants are both foreign corporations (Delaware and British Columbia, Canada) with primary places of business in the State of Illinois.  The matter in controversy, exclusive of costs and interest, exceeds the sum or value of One Hundred Thousand Dollars ($100,000.00).

9.      Venue is proper in this District by virtue of the provisions of Title 28, United States Code, Section 1391(b)(2), in that the plaintiff's residence and principal place of business is in the Southern District of New York and a substantial part of the events or omissions giving rise to this claim occurred in the Southern District of New York.

**PLAINTIFF'S COMMISSION ARRANGEMENT and THE GREEN RX TRANSACTION**

10.     In or about mid-to-late 2018, Verano, through the person of its founder and officer, Sam Dorf, asked plaintiff, a resident of the City of New York, for her help in locating relevant assets for Verano to purchase.

11.     At that time and continuously thereafter, plaintiff asked for an agreement in writing spelling out the terms of her compensation.

12.     Despite plaintiff's repeated requests, Verano delaying providing plaintiff with a formal written agreement and made excuses like being "slammed" and "way behind" for the delay.

13.     At all times, Verano knew that plaintiff was not working for free and would have to be compensated in the event that a transaction closed.

14.     Verano agreed to, and did in fact, pay plaintiff's travel expenses for purposes of locating appropriate target investments for Verano, such as the subject investment.

15.     On or about November 21, 2018, plaintiff introduced Dorf to Steven Hightower, an officer of an Ohio-based entity known as Green RX, LLC dba Have a Heart Cincy ("Green RX"), in a conference call.

16.     Plaintiff continued to work thereafter on this proposed transaction continuously to bring the parties to an agreement on terms.

17.     On or about February 14, 2019, plaintiff flew (at Verano's expense) from New York City to Verano's offices in Chicago, Illinois, where, among other things, the parties negotiated plaintiff's compensation for the Green RX transaction.  Again plaintiff asked for the terms of her compensation to be reduced to writing.

18.     Ultimately, the parties ultimately agreed that plaintiff would be paid a 5% finders fee for her efforts in finding the Green RX transaction for Verano to purchase.

19.     Shortly after the Chicago meeting between plaintiff and Verano, Verano issued a formal term sheet to Green RX dated February 27, 2019 for an option to purchase 51% of the issued and outstanding membership interests in Green RX for $1.1 million plus a high-interest (9%) loan

of $1.14 million.

20.     During this time, plaintiff repeatedly requested a formal written agreement to memorialize the terms of plaintiff's work for Verano and the commission owed to plaintiff by defendant.

21.     On or about April 18, 2019, Verano entered into a Membership Interest Purchase Option Agreement whereby Verano acquired an option to purchase membership interests in Green RX. Upon information and belief, this Agreement contemplated Verano purchasing 100% of Green RX upon receipt of approval from the appropriate regulatory authorities, a process which necessarily take more than a year.

22.     Finally, on or about April 19, 2019 Verano agreed in writing to plaintiff's request for 5% fee for her work on the Green RX transaction (see Exhibit A) and provided plaintiff with a formal written Fee Agreement–dated April 4, 2019–providing for a "Finder's Fee" to plaintiff:

> "provided the initial sale is consummated within one (1) year from the date of introduction at the rate of Five Percent (5%) of the Gross valued Purchase Price."

See Exhibit B.

23.     The Finder's Fee Agreement also provides that it is "governed by, and construed in accordance with, the laws of the State of Illinois . . . ."

24.     Plaintiff signed this Fee Agreement on April 22, 2019 and provided it to counsel for Verano (Chris Fotopoulos) that same day. See Exhibit C.

25.     On or about July 1, 2021 Verano closed on the purchase of one hundred percent (100%) of the membership interests in Green Rx, after receiving regulatory approval for the transaction, which was apparently delayed more than the expected year to due to the pandemic.

26.     The aggregate consideration for the transaction was US$9,500,000 (plus interest of over US$100,000) plus 310 "Proportionate Voting Shares" valued at C$619,681.599 (US$489,517.48, appx), for a total of over US$10 million.

27.     At that time Verano admitted that it owed plaintiff a commission on this transaction:

"Please call me at your convenience to discuss your commission fee." <u>See</u> email dated July 2, 2021, Exhibit D, attached hereto.  Counsel for Verano LLC sent that email from a Verano LLC email address.

28.     Plaintiff thereafter demanded her commission, but defendants refused to pay unless plaintiff accepted substantially less than what she was owed, saying "we had an agreement then Steve Hightower got involved and changed it." <u>See</u> Exhibit E.

### AS AND FOR A FIRST CAUSE OF ACTION
### BREACH OF CONTRACT - UNDER ILLINOIS LAW

29.     In contract cases, New York courts apply a "center of gravity" or "grouping of contacts" approach. <u>Brink's Ltd. v. South African Airways</u>, 93 F.3d 1022, 1031 (2d Cir. 1996). Under this approach, courts "may consider a spectrum of significant contacts, including the place of contracting, the places of negotiation and performance, the location of the subject matter, and the domicile or place of business of the contracting parties. The traditional choice of law factors, the places of contracting and performance, are given the heaviest weight in this analysis." <u>Id</u>.

30.     Here, Illinois law applies to this breach of contract claim because (a) the parties specifically chose to be governed by Illinois law, (b) the contract was negotiated by the parties in Illinois, ( c) the contract was drafted by Verano in Illinois, and (d) plaintiff performed–at least in part–in Illinois.

31.     The Illinois Statute of Frauds does not require that a contract such as this be in writing.  <u>See</u> 740 ILCS 80/1.

32.     Plaintiff fully performed under the terms of this agreement in that she introduced Verano to Green RX in or about November 2018, continued to work to bring the parties to an agreement on terms, and the transaction ultimately closed in July 2021.

33.     While the transaction did not close until July 2021, the transaction between Verano and Green RX was "consummated" on or about April 18, 2019 when Verano entered into a Membership Interest Purchase Option Agreement to acquire an option to purchase membership interests in Green RX. <u>Murphy v. Empire of America FSA</u>, 583 F. Supp. 1563, 1565 (WDNY 1984)

("consummation of a transaction occurs at the time the commitment contract is executed.").

34.     Further, Verano admitted to owing plaintiff a debt on this transaction by email dated July 2, 2021: "Please call me at your convenience to discuss your commission fee." See Exhibit E.

35.     Thus, under the terms of plaintiff's agreement–whether it is implied by law, oral or written–with Verano plaintiff is entitled to payment of commissions from Verano in the amount of 5% of the $10 million paid by Verano for 100% of Green RX or $500,000.

36.     To date, despite due demand, defendants have failed and refused to pay plaintiff this commission which is owed to her.

37.     Accordingly, defendants have breached their agreement (either implied, oral or written) with plaintiff and owe her the sum of at least $500,000.00 together with interest thereon from July 1, 2021.

## AS AND FOR A SECOND CAUSE OF ACTION
## BREACH OF WRITTEN AGREEMENT–NEW YORK LAW

38.     In the alternative, plaintiff had a written agreement with Verano under New York law for the payment of a finder's fee.

39.     Under New York law, an agreement is "in writing" even where it consists of several writings, only one of them must be signed to establish an agreement "in writing". See Crabtree v. Elizabeth Arden Sales Corp., 305 N.Y. 48, 56 (1953). Signed and unsigned documents may be read together provided they clearly refer to the same transaction. Id. at 55.

40.     The parties entered into a written agreement dated April 4, 2019, which plaintiff signed on April 22, 2019 (Exhibit B) and defendants acceded to by emails dated April 19, 2019 (Exhibit A) and September 18 (Exhibit E).

41.     Defendant further admitted to owing plaintiff a debt on this transaction by email dated July 2, 2021: "Please call me at your convenience to discuss your commission fee." See Exhibit D.

42.     Plaintiff fully performed under the terms of this agreement in that she introduced Verano to Green RX in or about November 2018, continued to work to bring the parties to an agreement on terms, and the transaction ultimately closed in July 2021.

43.     While the transaction did not close until July 2021, the transaction between Verano and Green RX was "consummated" on or about April 18, 2019 when Verano entered into a Membership Interest Purchase Option Agreement to acquire an option to purchase membership interests in Green RX.  Murphy v. Empire of America FSA, 583 F. Supp. 1563, 1565 (WDNY 1984) ("consummation of a transaction occurs at the time the commitment contract is executed.").

44.     Thus, under the terms of plaintiff's written agreement with Verano plaintiff is entitled to payment of commissions from Verano in the amount of 5% of the $10 million paid by Verano for 100% of Green RX or $500,000.

45.     To date, despite due demand, defendants have failed and refused to pay plaintiff this commission which is owed to her.

46.     Accordingly, defendants have breached their written agreement with plaintiff and owe her the sum of at least $500,000.00 together with interest thereon from July 1, 2021.

### AS AND FOR A THIRD CAUSE OF ACTION
### PROMISSORY ESTOPPEL and/or UNJUST ENRICHMENT

47.     In the alternative, in the event that there is found to be no enforceable contractual arrangement between plaintiff and Verano, Verano still owes plaintiff a commission under the equitable theory of promissary estoppel and/or unjust enrichment.

48.     Plaintiff fully performed under the terms of her arrangement with Verano, in reliance on the written and oral assurances that she received from Verano, and Verano was unarguably enriched by plaintiff's successful effort in locating and arranging for the purchase of an asset, Green RX.

49.     Verano's enrichment was at plaintiff's expense in that plaintiff expended time and effort on Verano's behalf in her successful effort in locating and arranging for the purchase of an asset, Green RX.

50.     It is against equity and good conscience to permit Verano to retain plaintiff's commission since both parties contemplated that plaintiff would be compensated for her time and effort by commission in the event of a successful transaction, which in fact occurred.

51.     Accordingly, defendants owe plaintiff an amount to be awarded by the jury at trial but believed to be the sum of at least $500,000.00 together with interest thereon from July 1, 2021.

**AS AND FOR A FOURTH CAUSE OF ACTION**
**VIOLATION OF NEW YORK CITY ADMIN. CODE §20-927, et seq.**

52.     In the alternative, Plaintiff was a "freelance worker" within the meaning of the Freelance Isn't Free Act, NYC Administrative Code §20-927, *et seq*. and entitled to seek the protection thereof.

53.     At all relevant times, plaintiff was a natural person that was hired or retained as an independent contractor by a hiring party to provide services in exchange for compensation, and therefore was a "freelance worker" within the meaning of NYC Admin Code §20-927.

54.     At all relevant times, Verano was Plaintiff's "hiring party" within the meaning of NYC Admin Code §20-927 in that Verano retained plaintiff to provide a service, to wit: to locate relevant assets for Verano to purchase.

55.     Verano hired plaintiff knowing that she was a resident of the City of New York and that she would, and actually did, perform at least part of her work on this transaction within the City of New York.

56.     The commission defendants owe to Plaintiff is "contracted compensation" within the meaning of NYC Admin Code §20-929.

57.     Defendants' failure to pay commission constitutes a denial of, and failure, to pay "contracted compensation" under NYC Admin Code §20-929.

58.     Plaintiff insisted repeatedly, from even before she began work on this transaction, that Verano put the terms of their agreement in writing but Verano failed to do so in a timely and proper fashion instead making excuses for their failure to comply.

59.     Prior to the commencement of this lawsuit, Verano threatened plaintiff to accept approximately 10% of the compensation that she was owed or else face a costly and drawn out legal battle.

60.     Verano's threat to plaintiff that was an effort at intimidating plaintiff in retaliation for

her demanding the compensation that she was owed, within the meaning of NYC Admin Code §7-501(b).

61.     This cause of action is timely pursuant to NYC Admin Code §20-933(2) and (3) in that it is brought within two years of the violative acts alleged to have occurred, or, even if they are outside the two year period, such statute of limitations was tolled by virtue of the toll on statutes of limitations set forth in Executive Order No. 202.8 of New York State Governor Cuomo on March 20, 2020 and extended for 242 days through November 3, 2020. See Brash v. Richards, 195 A.D.3d 582, 585 (2d Dept. 2021) ("the subject executive orders tolled the time limitation . . . ."); Foy v State of New York, 71 Misc. 3d 605, 609 (Ct. Claims February 16, 2021) ("it is clear that a toll, and not a suspension, was intended [by the Governor's Executive Orders] . . . .").

62.     Verano violated NYC Admin Code §20-928 in that plaintiff requested a written contract before the contracted work began and defendants refused and failed to provide such a written contract.  Accordingly, pursuant to NYC Admin Code §20-933(b)(2)(b), defendants owe plaintiff statutory damages equal to the value of the underlying contract ($500,000) for the violation of section 20-928 in addition to the "contracted compensation" plus reasonable attorney's fees, interest thereon from July 1, 2021, court costs and disbursements.

63.     Verano also violated NYC Admin Code §20-929(a) in that defendants refused and failed to pay plaintiff her "contracted compensation" no later than 30 days after the completion of her services under the contract.  Accordingly, pursuant to NYC Admin Code §20-933(b)(3), defendants owe plaintiff double damages ($1,000,000) plus reasonable attorney's fees, interest thereon from July 1, 2021, court costs and disbursements.

64.     Verano also violated NYC Admin Code §20-929(b) in that defendants insisted that plaintiff accept approximately 10% of the compensation that she was owed or else face a costly and drawn out legal battle.  Accordingly, pursuant to NYC Admin Code §20-933(b)(3), defendants owe plaintiff double damages ($1,000,000) plus reasonable attorney's fees, interest thereon from July 1, 2021, court costs and disbursements.

65.     Verano also violated NYC Admin Code §20-930 in that defendants retaliated against plaintiff for asking for her earned compensation by threatening her that if she did not accept approximately 10% of the compensation that she was owed she would face a costly and drawn out legal battle.  Accordingly, pursuant to NYC Admin Code §20-933(b)(3), defendants owe plaintiff double damages ($1,000,000) plus reasonable attorney's fees, interest thereon from July 1, 2021, court costs and disbursements.

WHEREFORE, Plaintiff hereby demands judgment against the Defendants, VERANO HOLDINGS, LLC and VERANO HOLDINGS CORP., as follows:

(A)     On the First Cause of Action a money judgment in the amount of $500,000.00 together with interest thereon from July 1, 2021;  or in the alternative;

(B)     On the Second Cause of Action a money judgment in an amount to be awarded by the jury at trial but believed to be the sum of at least $500,000.00 together with interest thereon from July 1, 2021; or in the alternative;

(C)     On the Third Cause of Action a money judgment in an amount to be awarded by the jury at trial but believed to be the sum of at least $500,000.00 together with interest thereon from July 1, 2021; or in the alternative;

(D)     On the Fourth Cause of Action a money judgment in the amount of all contracted compensation as specified above ($500,000.00), plus reasonable attorney's fees, interest thereon from July 1, 2021, court costs and disbursements plus: (i) statutory damages equal to the value of the underlying contract ($500,000) for the violation of section 20-928, (ii) double damages ($500,000) for the violation of section 20-929(a), (iii) double damages ($500,000) for the violation of section 20-929(b),  (iv) double damages ($500,000) for the violation of section 20-930, for a total of $2.5 million plus attorney's fee, interest and costs.

(E)     Such other and further relief as the court may deem just and reasonable.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b), plaintiff demands a trial by jury of all

issues so triable.

Dated:  New York, New York
          January 14, 2022


                                        Yours, Etc.,
                                        Stadtmauer & Associates


                          By:      */s/ Marc A. Stadtmauer*
                                    Marc A. Stadtmauer (MS 5863)
                                    Attorneys for Plaintiff
                                           Nancy "Tex" Caldarola
                                    110 East 42nd Street, Suite 1508
                                    New York, New York 10017
                                    (212) 986-6200

**Exhibit A**

**From:** Chris Fotopoulos <chris@verano.holdings>
**Date:** April 19, 2019 at 10:48:32 AM EDT
**Subject: Re: framework agreement terms /White Knight**

Tex,

I changed the fee to 5%.

Please confirm you have received payment for the previous expenses.

Thanks,

Chris L. Fotopoulos, Esq.  | Verano.Holdings <http://verano.holdings/>
Executive Vice President – Legal Real Estate
415 N. Dearborn, Chicago, IL. 60654  - 4th Floor
Chris@Verano.Holdings | D: 312-819-4859 M: 773-879-4907

On 4/4/19, 10:50 AM, "Chris Fotopoulos" <chris@verano.holdings> wrote:

  Hey Tex,

  This is the first time I am hearing of a warrant pool as well as the fee of 5%.  Can you provide some additional color on the warrant pool?  How would this work in our arrangement?

  I have reached out to Sammy for clarification and will circle back.

  Sit tight.

  Chris L. Fotopoulos, Esq.  | Verano.Holdings <http://verano.holdings/>
  Executive Vice President – Legal Real Estate
  415 N. Dearborn, Chicago, IL. 60654  - 4th Floor
  Chris@Verano.Holdings | D: 312-819-4859 M: 773-879-4907
  On 4/4/19, 10:46 AM, "Tex Caldarola" <tex@whiteknightglobalpartners.com> wrote:

    Chris,
    In my 20 year history in the banking industry, I have never done a deal remotely under the "standard Lehman formula" 5% of gross.
    Don't know where this comes from.
    I trust you guys clearly understand I am not some "finder" nor is the proposed % reflective of even a "finder fee".
    In addition, I have currently agreements in place that not only grant me 5%+ in cash, I also have a warrant pool % apportioned to me.
    This clearly represents my reputation as well value to the entity to which I am working with fullstop.

The proposed terms do not work at the level you guys are suggesting.
Let me know.

Tex

On Apr 4, 2019, at 8:38 AM, Chris Fotopoulos <chris@verano.holdings> wrote:

Tex,

I have reached out to Sammy for confirmation.  Todd, any insight here is appreciated.

Chris L. Fotopoulos, Esq.  | Verano.Holdings <http://verano.holdings/>
Executive Vice President – Legal Real Estate
415 N. Dearborn, Chicago, IL. 60654  - 4th Floor
Chris@Verano.Holdings | D: 312-819-4859 M: 773-879-4907

On 4/4/19, 10:36 AM, "Tex Caldarola" <tex@whiteknightglobalpartners.com> wrote:

Chris,

The proposed terms were 5% of gross, not 3%.
That is significantly below Lehman typical formula.

Todd, can you weigh in on this ?

On Apr 4, 2019, at 8:23 AM, Chris Fotopoulos <chris@verano.holdings> wrote:

Tex, great to connect with you as well. I have forwarded the invoice to Sammy again.  I will
follow up with him again.

Please review and let me know if you have any questions or concerns.

Thanks,

Chris L. Fotopoulos, Esq.  | Verano.Holdings <http://verano.holdings/>
Executive Vice President – Legal Real Estate
415 N. Dearborn, Chicago, IL. 60654  - 4th Floor
Chris@Verano.Holdings | D: 312-819-4859 M: 773-879-4907

On 4/4/19, 9:21 AM, "Tex Caldarola" <tex@whiteknightglobalpartners.com> wrote:

Chris,
Great chatting and looking forward to a lot of business.

FYI.
Still have not received payment.
Please advise when Sammy will send on Zelle.
Tex


<Commercial Referral Fee Agreement - Tex Caldarola (4.4.2019)(Final).pdf>

**Exhibit B**

# FEE AGREEMENT

THIS FEE AGREEMENT, dated as of April 4, 2019 (the "**Agreement**"), is entered into by and between Verano Holdings, LLC, a Delaware limited liability company having its principal place of business at 415 N. Dearborn St. 4th Floor, Chicago, Illinois 60654 ("**Verano**"), and Tex Caldarola ("**Finder**"), and together with Verano, the "**Parties**", and each, a "**Party**").

WHEREAS, Verano is a multi-state operator ("MSOs") of medicinal and recreational cannabis which operates dispensaries, cultivation centers and processing laboratories; and

WHEREAS, Verano desires to engage Finder to introduce to Verano any potential sales leads of cultivation licenses or dispensary licenses ("**Leads**"), and Finder desires to accept such engagement.

NOW, THEREFORE, in consideration of the premises set forth above and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties agree as follows:

1.      Engagement.

(a)      Verano hereby engages Finder, and Finder hereby accepts such engagement, to act as Verano's non-exclusive finder with respect to the purchase of Leads, local as well as international (the "**Territory**") during the Term, solely in accordance with the terms and conditions of this Agreement. Verano may in its sole discretion engage any other person or Harvest Health and Recreation to purchase other MSOs.

(b)      Finder shall introduce Verano to Leads, and perform such other responsibilities as reasonably directed by Verano, including forwarding sales literature and samples provided by Verano, participate in negotiations but not have authority to bind Verano.

(c)      Finder makes no representation or warranty about the creditability or suitability of Leads introduction to Verano, and neither Verano, nor any of its directors, officers, or shareholders, should in any way rely on Finder to perform any due diligence with respect to the creditability or suitability of Leads.

(d)      The prices, terms, and conditions under which Verano offers to purchase Leads shall be determined by Verano in its sole discretion. Verano shall have the authority to control all discussions and negotiations regarding any proposed or actual offering. Nothing in this Agreement shall obligate Verano to actually consummate any transaction with Leads. Verano may terminate any negotiations or discussions at any time and has the right not to proceed with any purchase without any liability or obligation to pay compensation to Finder under Section 2 or otherwise. <span>Deleted:</span>

2.      Compensation. In consideration for the services rendered by Finder hereunder, Verano shall pay to Finder compensation ("**Finder's Fee**") on the purchase made by Verano of Leads as introduced by Finder to Verano hereunder, provided the initial sale is consummated within one (1) year from the date of introduction at the rate of Five Percent (5%) of the Gross valued Purchase Price.

"**Purchase Price**" means the gross sales price of Leads and introduced by Leads hereunder. Verano shall pay the Finder's Fee on the closing date of Verano purchasing Leads.

Independent Contractor. Finder is an independent contractor of Verano, and this Agreement shall not be construed to create any association, partnership, joint venture, employee, or agency relationship between Finder and Verano for any purpose. Finder has no authority (and shall not hold itself out as having authority) to bind Verano and Finder shall not make any agreements or representations on Verano's behalf without Verano's prior written consent. Without limiting the above, Finder will not be eligible to participate in any vacation, group medical or life insurance, disability, profit sharing or retirement benefits, or any other fringe benefits or benefit plans offered by Verano to its employees, and Verano will not be responsible for withholding or paying any income, payroll, Social Security or other federal, state or local taxes, making any insurance contributions, including unemployment or disability, or obtaining worker's compensation insurance on Finder's behalf. Finder shall be responsible for, and shall indemnify Verano against, all such taxes or contributions, including penalties and interest. Finder shall be solely responsible for all costs or expenses that it may incur in the performance of its activities under this Agreement.

3.    Confidentiality. All non-public, confidential, or proprietary information of Verano, including, but not limited to, specifications, samples, patterns, designs, plans, drawings, documents, data, business operations, customer lists, pricing, discounts, and rebates, disclosed by Verano to Finder, whether disclosed orally or disclosed or accessed in written, electronic, or other form or media, and whether or not marked, designated, or otherwise identified as "confidential," in connection with this Agreement, as well as the terms and conditions and the existence of this Agreement is confidential, solely for the use of performing this Agreement and may not be disclosed or copied unless authorized by Verano in writing. Upon Verano's request, Finder shall promptly return all documents and other materials received from Verano. Verano shall be entitled to injunctive relief for any violation of this Section 3. This section shall not apply to information that is: (a) in the public domain; (b) known to the Finder at the time of disclosure; or (c) rightfully obtained by the Finder on a non-confidential basis from a third party.

**Deleted:**

4.    Publicity and Announcements. Finder shall not (orally or in writing) publicly disclose or issue any press  or make any other public statement, or otherwise communicate with the media, concerning the existence of this Agreement or the subject matter hereof, without the prior written approval of Verano which shall not be unreasonably withheld or delayed, except to the extent that Finder (based upon the reasonable advice of counsel) is required to make any public disclosure or filing with respect to the subject matter of this Agreement by applicable law.

5.    Term and Termination.

(a)    The term of this Agreement commences on the date of this Agreement and continues for a period of one year, unless and until earlier terminated as provided under this Agreement (the "**Term**") or unless and until earlier terminated as provided under this Agreement.

(b)    In addition to any remedies that may be provided in this Agreement, either Party may terminate this Agreement with immediate effect upon Notice to the other

party, if the other party: (i) fails to pay any amount when due under this Agreement and such failure continues for thirty (30) days after the other party's receipt of Notice of nonpayment; (ii) has not otherwise performed or complied with any of the terms of this Agreement, in whole or in part; or (iii) becomes insolvent, files a petition for bankruptcy, or commences or has commenced against it proceedings relating to bankruptcy, receivership, reorganization, or assignment for the benefit of creditors.

6.    Miscellaneous.

(a)    All notices, requests, consents, claims, demands, waivers, summons and other legal process, and other similar types of communications hereunder (each, a "**Notice**") must be in writing and addressed to the relevant Party at the address set forth on the first page of this Agreement (or to such other address that may be designated by the receiving Party from time to time in accordance with this Section 7(a). All Notices must be delivered by personal delivery, nationally recognized overnight courier (with all fees pre-paid), or certified or registered mail (in each case, return receipt requested, postage prepaid). A Notice is effective only (i) upon receipt by the receiving Party and (ii) if the Party giving the Notice has complied with the requirements of this Section 7(a).

(b)    This Agreement and all matters arising out of or relating to this Agreement are governed by, and construed in accordance with, the laws of the State of Illinois, without regard to the conflict of laws provisions of such State. Any legal suit, action or proceeding arising out of or relating to this Agreement must be instituted in the federal courts of the United States of America or the courts of the State of Illinois, in each case located in the City of Chicago and County of Cook, and each Party irrevocably submits to the exclusive jurisdiction of such courts in any such suit, action, or proceeding. Service of process, summons, notice or other document by certified mail in accordance with Section 7(a) will be effective service of process for any suit, action, or other proceeding brought in any such court.

(c)    This Agreement, and each of the terms and provisions hereof, may only be amended, modified, waived, or supplemented by an agreement in writing signed by each Party.

(d)    Finder shall not assign, transfer, delegate, or subcontract any of its rights or obligations under this Agreement without the prior written consent of Verano. Any purported assignment or delegation in violation of this Section shall be null and void. Verano may at any time assign, transfer, or subcontract any or all of its rights or obligations under this Agreement without Finder's prior written consent. This Agreement will inure to the benefit of and be binding upon each of the Parties and each of their respective permitted successors and permitted assigns.

(e)    This Agreement may be executed in counterparts, each of which is deemed an original, but all of which together constitutes one and the same agreement. Delivery of an executed counterpart of this Agreement electronically or by facsimile shall be effective as delivery of an original executed counterpart of this Agreement.

(f)    If any term or provision of this Agreement is invalid, illegal, or unenforceable in any jurisdiction, such invalidity, illegality, or unenforceability shall not

affect any other term or provision of this Agreement or invalidate or render unenforceable such term or provision in any other jurisdiction.

(g)     This Agreement constitutes the sole and entire agreement of the Parties with respect to the subject matter contained herein, and supersedes all prior and contemporaneous understandings, agreements, representations, and warranties, both written and oral, with respect to such subject matter.

(h)     The parties do not confer any rights or remedies upon any person other than the Parties and their respective successors and permitted assigns.

IN WITNESS WHEREOF, the Parties have executed this Agreement as of the date first written above.

Verano Holdings, LLC

By_____

Name: George Archos

Title: CEO

4/22/2019

_____

Tex Caldarola

4/22/2019

**Exhibit C**

‹    **Details**    •••

# Commercial Referral Fee Agreement - Tex Caldarola (4.4

Sender: TexCaldarola

Received: Apr 22, 2019 at 9:49 AM

## Recipients

1    ✓    **TexCaldarola (me)**
texconnect@msn.com
Signed Apr 22, 2019 at 9:49 AM

2    ✓    **Chris  Fotopoulos**
chris@verano.holdings
Received a Copy

✓ Completed        **Share**

**Exhibit D**

# GreenRx

July 2, 2021 at 10:11 AM

From  Tex Caldarola

To  Todd Bergeron

📎 ▢ image001.gif 450.07 KB

---

Sent from my iPhone

Begin forwarded message:

**From:** Chris Fotopoulos <chris@verano.holdings>
**Date:** July 2, 2021 at 9:35:29 AM PDT
**To:** Tex Caldarola <tex@whiteknightglobalpartners.com>
**Cc:** Edward Shen <edward@verano.holdings>, Sammy Dorf <sammy@verano.holdings>
**Subject: GreenRx**

Tex,

Hope you are well. We have received regulatory approval for GreenRx. Please call me at your convenience to discuss your commission fee.

Direct dial is (312) 819-4859.

Thanks,

Chris.

**Chris L. Fotopoulos, Esq.**  | **Verano.Holdings**
**Executive Vice President – Legal Real Estate**
**415 N. Dearborn, Chicago, IL. 60654  - 4th Floor**
Chris@Verano.Holdings | **D: 312-819-4859 M: 773-879-4907**

**Exhibit E**

7:44

11   SD   Sammy ›

Mon, Sep 13, 4:24 PM

My sincere condolences 💐 about your mum. I know how much you loved her and she is in Heaven now smiling down on you and your accomplishments... I know she is very proud of you.
Tex

Fri, Sep 17, 3:10 PM

Would like to rectify the situation amicably on greenRX ..

Sat, Sep 18, 8:04 AM

Once the lawyers get involved it's pretty much out of my hands unfortunately

Yeah, however, the lawyers are paid by you.

I find it peculiar as you have always stuck me as a upright guy.

We had an agreement then Steve Hightower got involved and changed it

One asset, Total buyout 100%

iMessage